IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VILMA BOUCHARD, ADMINISTRATRIX OF
ESTATE OF SAMANTHA A. BOUCHARD,

               Plaintiff,                                  04cv1798

         v.                                      ELECTRONICALLY FILED

CSX TRANSPORTATION, INC.,

               Defendant.

**<u>Memorandum Opinion</u>**

**September 16, 2005**

       This is a negligence wrongful death action.  Plaintiff, Vilma Bouchard (hereinafter "Bouchard"), Admistratrix of the Estate of Samatha A. Bouchard (hereinafter "Ms. Bouchard") who was tragically hit by a train that was owned and operated by defendant, CSX Transportation (hereinafter "CSX") while riding her bicycle.  Plaintiff alleges that CSX was negligent in several respects, thereby causing the untimely death of Ms. Bouchard.  Pending before this Court is defendant's motion for summary judgment.  For the reasons set forth below, defendant's motion for summary judgment will be granted.

**I.**     **<u>Facts</u>**

       Unless otherwise noted, the following facts are undisputed.

       1.  On May 25, 2003, at approximately 3:15 p.m., Ms. Bouchard was riding her bicycle in a northerly direction on Juniper Street in Versailles Borough, Allegheny County, Pennsylvania.

       2.  Ms. Bouchard stopped her bicycle on the south side of the crossing and at the right edge of the roadway, as a CSX train was traveling eastbound (from Ms. Bouchard's left to her right) through the crossing on the track closest to the south side of the crossing.

3.   The photographs attached as Exhibit "A" and "B" to CSX's Request for Admissions Directed to Plaintiff are fair and accurate representations of the Juniper Street crossing in Versailles, Pennsylvania as it existed on May 25, 2005, and show the vantage point of persons located on the south side of the crossing.

4.   From the vantage point of Ms. Bouchard on the south side of the crossing, the warning devices existing at the crossing included flashing light signals, a sign that says "3 tracks," and cross bucks, an "X" shaped sign which reads "Railroad Crossing."

5.   On May 25, 2003, the weather was sunny and warm, and Robert Dodds, a witness, was driving in a 1989 pickup.

6.   As he approached the crossing, the flashing warning lights on the south side of the crossing were in operation and were blinking red.

7.   When Mr. Dodds arrived at the crossing, Ms. Bouchard was already stopped on the right edge of the roadway and the eastbound train was in the crossing.

8.   Mr. Dodds pulled his vehicle next to Ms. Bouchard so that he was located to her left on the south side of the crossing.

9.   From his and Ms. Bouchard's vantage point, the eastbound train was on the inside track (i.e. the first track closest to Ms. Bouchard and Mr. Dodds), and was traveling from their left to their right.[1]

10.   The flashing lights on the south side of the crossing were operational (at least when

---

[1]Defendant alleges that train was traveling from the right to their left.  However, after reviewing the testimony of Mr. Dodds, which both parties cite in support of these facts, this Court notes that he testified that the train was traveling from the left to the right.  Plaintiff's Exhibit 1, page 21.

Mr. Dodd first approached), and Ms. Bouchard was located five feet south of the flashing light, far enough back that she could see the flashing lights.

11.   Mr. Dodds never observed the warning lights stop flashing, but he also did not look at them after he first approached the crossing.

12.   Mr. Dodds recalled giving a statement to CSX claims representative and he recalled saying that "the crossing lights were still going and the girl took off on her bike and a train going the other way hit her."

13.   When Ms. Bouchard was learning how to drive at age 16, over eight years prior to this accident, her mother told her that when she came to a railroad crossing with red flashing lights, she was supposed to stop, wait until the lights stopped flashing, look both ways, and be sure the crossing was clear before proceeding.

14.   According to plaintiff, Ms. Bouchard and Mr. Dodds waited about five to ten minutes for the eastbound train to pass through the crossing.  Defendant contends that Ms. Bouchard and Mr. Dodds waited five minutes for the train to pass.

15.   According to defendant, as soon as the eastbound train cleared the crossing, Ms. Bouchard glanced from her left to her right, and then "took off" on her bicycle, while Mr. Dodds remained stationary in his vehicle and never took his foot off the brake.  Whereas, plaintiff alleges that after the eastbound train (the first train) had cleared the crossing by about 50 feet and before pedaling into the crossing, Ms. Bouchard looked to her left and to her right, but because the first train blocked her vision of the second train, she did not see that train.

16.   As Ms. Bouchard was pedaling over the crossing onto the second track, the right front of the westbound CSX locomotive struck the back tire of Ms. Bouchard's bicycle.

3

17.   On the date of the accident, Jeffrey Taylor, who was sitting on the right side of the locomotive cab, was the engineer and operator of the westbound CSX train traveling on the second or middle track, and Brian Frazee, who was sitting to the left of Mr. Taylor, was the conductor.

18.   Defendant contends that Mr. Taylor was certified as a locomotive engineer by the Federal Railroad Administration ("FRA") beginning in March, 1999 and was certified to operate the train on the date of the accident.  Plaintiff disputes this contention and states that Mr. Taylor was required to receive certification of his Operating Rule in 2003 and the records show that he had not done so and thus he was not certified to operate the train on the day of the incident.

19.   Defendant claims that Mr. Frazee was qualified as a conductor as of May 25, 2003, and was up to date on his operating rules test.  Plaintiff disputes this contention and states that Mr. Frazee was not up to date on his operating rules test and had not been certified for the year of the incident.

20.   The train was traveling from Cumberland, Maryland to New Castle, Pennsylvania.

21.   There were no mechanical difficulties with the train during the trip from Cumberland to New Castle.

22.   Beginning at milepost 309.7, before the Center Street crossing (which is east of Juniper Street crossing), Mr. Taylor's westbound train entered the 40 mph speed restriction on the track, and thereafter the speed of the locomotive never went above 40 mph.

23.   CSX locomotive 219 was the lead locomotive of the westbound train, and was traveling on a class 3 track as defined by the Federal Railroad Administration with a maximum allowable operating speed for freight trains of 40 mph.

4

24. The applicable CSX timetable for this area also provides a maximum authorized speed of 40 mph for freight trains.

25. Defendant contends that the data table from the event recorder download of CSX locomotive 219 shows that Mr. Taylor was blowing the horn and ringing the bell for the Center Street Crossing and then the Juniper Street crossing before an emergency application of the brakes was made. Plaintiff disputes the contention that Mr. Taylor blew the horn and rang the bell at the Juniper Street crossing because Mr. Dodd testified that he did not hear the bell or the horn until after the train hit Ms. Bouchard.

26. From the time Mr. Taylor reached milepost 309.7, before the Center Street crossing, to the time the train as placed into emergency, the speed of the train never exceeded 40 mph.

27. After passing through the Center Street crossing and around a curve in the track toward the Juniper Street crossing, Mr. Taylor was not able to see the entirety of the Juniper Street crossing due to the presence of the eastbound train to his left, which blocked his view.

28. According to defendant, Mr. Taylor was able to view the crossing from the position of the eastbound train all the way to his right, and he observed that all sets of the flashing warning lights on the north side of the crossing were operating. Plaintiff disputes this contention and argues that Mr. Taylor could not see if the south side crossing lights were flashing and he never checked to see if they were active as he was approaching the crossing or after he went through the crossing.

29. According to defendant, Mr. Taylor activated the appropriate horn sequence (two longs, a short and a long) and the bell approximately 15 to 20 and 1000 feet before the Juniper Street crossing. Plaintiff disagrees with this contention and cites to the testimony of Mr. Dodd,

who stated that he did not hear any audio warnings.

30.  Defendant contends that as Mr. Taylor approached the crossing he estimated that he could first see the end of the eastbound train when his train was approximately 300 feet from the Juniper Street crossing.  Plaintiff denies this contention and cites generally to page 3, paragraph 6 of her expert report, which states that had the engineer blown long distinct whistle blasts at the whistle post, followed by a frantic succession of whistle blast when it was clear they would be passing the end of another train, Ms. Bouchard would not have been killed.

31.  Mr. Taylor further stated that he was approximately 90 feet away from the Juniper Street crossing when he realized that the rear of the eastbound train would clear the crossing before his train reached the crossing.  Plaintiff denies this contention and again cites generally to page 3, paragraph 6 of her expert report, which states that had the engineer blown long distinct whistle blasts at the whistle post, followed by a frantic succession of whistle blast when it was clear they would be passing the end of another train, Ms. Bouchard would not have been killed.

32.  Mr. Taylor estimated that he was 50 feet away from the crossing when he first realized that the eastbound train had cleared the Juniper Street crossing.  Again, plaintiff denies this contention and cites generally to page 3, paragraph 6 of her expert report, which states that had the engineer blown long distinct whistle blasts at the whistle post, followed by a frantic succession of whistle blast when it was clear they would be passing the end of another train, Ms. Bouchard would not have been killed.

33.  Mr. Taylor stated that he was "right there," 50 feet away, perhaps, from the crossing when he first recognized that there was a person to his left.  Plaintiff does not dispute that Mr. Taylor made this statement for purposes of this motion.

6

34.   According to defendant, Ms. Bouchard first came into Mr. Taylor's view, when she was on her bicycle on track number two.  Plaintiff disputes this contention but does not offer a counter statement on this issue.

35.   According to defendant, when Mr. Taylor first saw Ms. Bouchard, she was looking straight ahead, from the south to the north.  Again, plaintiff disputes this contention but does not offer a counter statement on this issue.

36.   According to defendant, Mr. Taylor continued to watch Ms. Bouchard travel over the crossing until he could no longer see her because she had pedaled into the blind spot underneath the nose of the engine.  Again, plaintiff disputes this contention but does not offer a counter statement on this issue.

37.   According to defendant, just prior to that point, Ms. Bouchard looked up and to the right, and Mr. Taylor estimated that one to two seconds elapsed from the time he saw Ms. Bouchard look to the right until the impact.  Plaintiff again denies this contention.

38.   According to defendant, Mr. Taylor was blowing his horn in the last long of the horn sequence, approximately 5 to 6 seconds, when the impact occurred, and the horn stopped blowing some time after the impact.  Plaintiff disputes this contention and cites the testimony of Mr. Dodd, who stated that he did not hear the horn until after the impact.

39.   According to defendant, although it was difficult for Mr. Taylor to determine if the impact occurred before or after he applied the emergency brakes, Mr. Taylor testified that the brakes were applied simultaneously with impact.  Plaintiff again disputes this contention and cites to the testimony of Mr. Dodd.

40.   Ms. Bouchard died as a result of the accident.

41.   On April 15, 1963, the Pennsylvania Public Utility Commission ("PUC"), upon its own motion, instituted a complaint at docket number 17847 for purposes of determining whether the Juniper Street crossing should be altered, relocated, abolished and/or whether protective devices should be installed at the crossing.

42.   A hearing was held on August 7, 1963, and evidence was adduced that 7 accidents had occurred at the Juniper Street crossing between 1944 and 1963.

43.   During that hearing, the Baltimore & Ohio Railroad (predecessor to CSX) provided a 24-hour traffic count of the crossing, which included 33 children, 113 adults, 297 automobiles, 170 trucks, one miscellaneous highway move, and a total of 37 trains, plus two switching moves.

44.   In its order of February 3, 1964, the PUC required the installation of automatically operated flashing-light signals at the crossing, the cost to be borne between the railroad, the Borough of Versailles, and Allegheny County.

45.   Prior to the PUC's order, the Juniper Street crossing was equipped only with two standard crossing signs.

46.   According to defendant, CSX does not have any records, reports or knowledge of any accidents involving railroad trains and a motor vehicle or pedestrian since the installation of the flashing-light signals.

47.   The PUC has records of only two actions involving the Juniper Street crossing; (1) the complaint filed by the PUC at docket number 17847; and (2) an application by a company named "Lightnet" for installation of fiber option cable filed at docket number 106306.

## II.   <u>Standard of Review</u>

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at

325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.)  *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

## III.   Discussion

Defendant has moved for summary judgment arguing (A) that defendant was not negligent as a matter of law for the following reasons: (1) it owed no common law duty to plaintiff's decedent to provide any particular and/or additional warning devices at the subject crossing, and any such argument is subject to preemption because the PUC has exclusive authority to design and construct railroad crossings; (2) there is no genuine issue of material fact regarding whether the railroad initiated a proper warning horn; (3) there is no genuine issue of material issue of fact regarding whether the railroad was negligent in removing safety and warning devices at the crossing because the records from the PUC do not establish that any safety or warning devices were removed therefrom; (4) the theory of excessive speed is preempted by federal law and is without any factual support; (5) the theory of failure to maintain proper

personnel for operating the train theory is preempted by federal law; and (6) there is no evidence of record to support plaintiff's claim that defendant was negligent for failing to stop the train before impact, in maintaining an improper braking system, and in failing to maintain proper equipment and weight for the train in question;[2] and, (B) that plaintiff was sufficiently contributorily negligent[3] to bar recovery as a matter of law.

The parties agree that Pennsylvania substantive law applies to this case.  Under Pennsylvania common law, to prove a claim of negligence against CSX, plaintiff must demonstrate a duty on the part of CSX, breach of that duty, proximate causation and damages. *Reilly v. Tiegarten, Inc.*, 633 A.2d 208 (Pa. Super. 1993).

---

[2]In her response to defendant's motion for summary judgment, plaintiff does not dispute defendant's allegations that summary judgment should be granted on negligence in failing to stop the train, in failing to maintain a proper braking system, and in failing to maintain a proper weight for the train in question.  Accordingly, this Court will rule in defendant's favor as to these issues.

[3]*See* 42 Pa.C.S.A. § 7102.  The comparative negligence statute, which replaced the contributory negligence statute, was adopted into law on July 9, 1976.  *Costa v. Lair*, 363 A.2d 1313 (Pa. Super. 1976).  Section 7102 of 42 Pa.C.S.A., states:

> In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recover is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

Since the passage of the comparative negligence statute, simple contributory negligence is no longer a complete bar to recovery.  *Ryden v. John Mansville Products,* 518 F. Supp. 311 (E.D. Pa. 1981).  However, for ease of reading, and because the cases cited below relative to plaintiff's alleged contributory negligence in failing to stop, look and listen are still good law, this Court will use the contributory negligence language, but our analysis will be based upon the standards of comparative negligence adopted by the Pennsylvania courts.

### A.  Defendant is not negligent as a matter of law

In her complaint, plaintiff alleges that CSX was negligent in failing to provide sufficient warning devices at the Juniper Street crossing, such as warning lights, traffic control devices, and gates.  In *McGlinchey v. Baker*, 356 F.Supp. 1134, 1142 (E.D. Pa. 1973), the District Court held that a railroad is under no duty to place safety gates or any particular type of safeguard at a crossing, but only must adopt a reasonably safe and effective mode, commensurate with the danger at the crossing, of warning travelers of the approach of trains.  In *Yolton v. Pennsylvania Railroad Company*, 84 A.2d 501 (Pa. 1951), the Supreme Court of Pennsylvania noted that plaintiff has the burden of proof to show unusual, peculiar and extra hazardous conditions at the crossing for the railroad to be charged with the duty of providing additional warning devices.

As the facts indicate, the subject crossing was equipped with flashing warning lights, as well as a sign reading "3 tracks," and crossbucks.  Plaintiff has failed to put forth any competent evidence to demonstrate some unusual, peculiar or extra hazardous conditions necessary to support her argument of negligence.  Thus, as a matter of law, the railroad had no common law duty to provide any particular and/or additional warning devices, thereby necessitating a dismissal of this claim of negligence against CSX.[4]

With regard to plaintiff's assertion that defendant was negligent because Mr. Taylor did not sound his horn, plaintiff has failed to present evidence creating a genuine issue of material fact regarding whether he sounded his horn. Plaintiff contends, with no evidence to support her conclusion, that because Mr. Dodd testified that he did not hear the horn and whistle that

_____

[4]In light of this ruling, the Court does not reach defendant's argument related to preemption by state law on the basis that the PUC has exclusive authority to design and construct railroad crossings.

somehow creates a genuine issue of fact regarding whether Mr. Taylor did in fact blow the horn and whistle.  Defendant presents competent evidence, from the data recorder log, which establishes that Mr. Taylor did blow the horn and ring his bell in compliance with his duty to do so.  That there is testimony that a witness did not actually hear the horn sounding or the bell ringing does not create a genuine dispute of fact as to whether defendant complied with this duty, and therefore, plaintiff's claim of negligence in this respect must also be dismissed.

Furthermore, there is no competent evidence to support plaintiff's allegations that warning devices and/or safety gates were removed.  The records from the PUC indicate any and all actions undertaken regarding the Juniper Street crossing (see paragraph 47 of the undisputed facts), and those records do not contain any facts supporting her allegations in this regard.  The testimony of two witnesses that safety gates were removed is not sufficient evidence to create a genuine issue of material fact on this issue.  Moreover, as stated above, the subject crossing was equipped with flashing warning lights, as well as a sign reading "3 tracks," and crossbucks, and plaintiff has failed to put forth any competent evidence to demonstrate some unusual, peculiar or extra hazardous conditions necessary to support her argument of negligence (i.e., the railroad had a common law duty to provide any particular and/or additional warning devices).

Likewise, plaintiff's allegations that the train was traveling at an excessive speed is not supported by the facts.  Rather, the evidence shows that the train did not exceed the posted speed limit of 40 mph.  Furthermore, and significantly, this Court agrees that *CSX Transportation v. Easterwood*, 507 U.S. 658 (U.S. 1993) is controlling on the issue that federal law preempts plaintiff's claim on an excessive speed theory.  In *Easterwood*, the United States Supreme Court specifically held that under the Federal Railway Safety Act, federal regulations adopted by the

Secretary of Transportation preempt a negligence action insofar as it asserts that a train was traveling at an excessive speed.  Accordingly, plaintiff's claim of negligence related to excessive speed fails as a matter of law.

   With regard to plaintiff's claim that defendant failed to maintain proper personnel for operating the train, plaintiff has neglected to present any evidence showing that if, in fact, Mr. Taylor and Mr. Frazee were not current on their certifications (a fact which defendant disputes), that such failure to maintain these certifications was a proximate cause of plaintiff's injuries.


### B.  Plaintiff is contributorily negligent as a matter of law

   Section 3051 of 75 Pa.C.S.A. states that every person riding a pedacycle upon a roadway shall be granted all of the right and shall be subject to all of the duties applicable to the driver of a vehicle.  Because Ms. Bouchard was riding her bicycle at the time of the accident, she is subject to all of the duties applicable to a driver of a motor vehicle.

   Pennsylvania law dictates that a driver of a motor vehicle must stop, look and listen before entering upon a railroad crossing and must continue to look and listen until having passed over the crossing, and the failure to do so constitutes contributory negligence as a matter of law. *Tomasek v. Monongahela Ry. Co.*, 235 A.2d 359, 362 (Pa. 1967).

   In *Baltimore & O.R. Co. v. Muldoon*, 102 F.2d 151 (3d Cir. 1939), the United States Court of Appeals for the Third Circuit stated:

> No principle is more firmly imbedded in the law of Pennsylvania than that a traveler who is about to cross a railroad track must stop, look and listen.  This is an absolute and unbending rule of law.  The stopping, looking and listening must not be merely nominal or perfunctory but substantial, careful and adapted in good faith for the accomplishment of the end in view.  Failure to comply

14

> with the duty is not merely evidence of negligence but is negligence per se, and
> is to be declared such by the court.

102 F.2d at 152.

In *Dolibois v. Pennsylvania Railroad Company*, 82 A.2d 65, 67-68 (Pa. Super. 1951), the

Superior Court stated:

> [O]ur court have consistently held that if a driver of a vehicle cannot obtain a
> reasonable view of a railroad track due to an obstruction, before proceeding
> onto the track, it is his duty to place himself in a position where such an
> observation can be made.
>
> [O]ur Supreme Court said that the requirement to stop, look and listen is not
> satisfied by coming to a standstill at a point where observation cannot be made,
> if there is apparent danger ahead, and that one attempting a crossing must
> comply with this mandatory duty, or no recovery can be had when damages are
> suffered.

In this case, the only competent evidence presented on the issue of whether Ms. Bouchard

complied with her duty to stop, look and listen indicates that she did not.  Mr. Dodd testified that

he witnessed Ms. Bouchard "glance" to the left and to the right before proceeding.  Further, Mr.

Taylor testified that Ms. Bouchard looked up and to the right one to two seconds prior to impact.

Plaintiff has presented no credible evidence to refute this testimony, and as such her "glance" can

only be categorized as nominal or perfunctory.

As to whether plaintiff complied with her duty to listen for the presence of an oncoming

train, as rehearsed, plaintiff's contention that because Mr. Dodd testified that he did not hear the

horn and whistle that somehow creates a material issue of fact regarding whether Mr. Taylor did

in fact blow the horn and whistle is untenable.

Therefore, this Court finds that plaintiff's failure to observe to the stop, look and listen

15

rule constitutes contributory negligence, in an amount exceeding 50 percent, as a matter of law. *See Gilbert v. Conrail*, 14 Pa. D & C 4th 147 (Pa. Com. Pl. 1992)(in the context of a summary judgment motion, where plaintiff's decedent crossed railroad tracks without looking and was struck by a train, a finding of negligence exceeding 50 percent is warranted, and entitles defendant railroad to judgment as a matter of law).

**IV.   Conclusion**

Even when viewing the facts in the light most favorable to plaintiff, the non-moving party, this Court finds that she has failed to adduce evidence creating a genuine issue of material facts on her various claims of negligence, and accordingly, her negligence claims against CSX fail as a matter of law.  Further, this Court finds that plaintiff's failure to stop, look and listen constitutes contributory negligence to such a degree that she is precluded from recovery as a matter of law.  For these reasons, defendant's motion for summary judgment will be granted (doc. no. 35).

An appropriate order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All counsel of record as listed below

James C. Heneghan, Esquire
Feldstein, Grinberg, Stein & McKee
428 Boulevard of the Allies
Pittsburgh, PA 15219

Joel A. Waldman, Esquire
564 Forbes Avenue
1112 Manor Complex
Pittsburgh, PA 15219

John Edward Wall, Esquire
Scott D. Clements, Esquire
Dickie, McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402